UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DONALD DESCHLER,

        Plaintiff,

  v.                                                     Case No. 16-C-740

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

## **DECISION AND ORDER AFFIRMING COMMISSIONER'S DECISION**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Donald Deschler's application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. 42 U.S.C. § 405(g). Plaintiff's counsel withdrew his representation on November 7, 2016. Plaintiff, now proceeding *pro se*, filed his initial brief on February 1, 2017, arguing that the Commissioner's decision should be reversed and the case remanded for further proceedings. The Commissioner filed a response brief on June 8, 2017. Plaintiff did not file a reply brief within fifteen days as required by this court's April 26, 2017 Order and has not requested additional time to file a reply. Accordingly, this matter is fully briefed and ripe for disposition. For the following reasons, the decision of the Commissioner will be affirmed.

**BACKGROUND**

On January 27, 2011, Plaintiff, age 38 at the time, completed an application for a period of disability, disability insurance benefits, and supplemental security income with his alleged disability beginning November 19, 2010. R. 167–77. Plaintiff worked as a forklift driver and general laborer prior to his alleged onset date. He stopped working on November 19, 2010 because he got laid off, not because of his medical conditions. R. 212. He had worked a third-shift job at a pallet plant for three weeks in late-November 2014, but he quit this job four days before his administrative hearing because his shoulder pain interfered with his work. The ALJ generously considered this work to be an unsuccessful work attempt. R. 16.

Following the denial of his applications initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). R. 116–17. ALJ Carla Waters conducted a hearing on February 4, 2013 at which Plaintiff, proceeding *pro se*, and a vocational expert testified. R. 33. In a written decision dated May 14, 2013, ALJ Waters determined Plaintiff was not disabled. R. 95. The Appeals Council remanded Plaintiff's case to ALJ Patrick Halligan to review new medical evidence submitted by Plaintiff regarding his knee pain. R. 101.

On December 9, 2014, Plaintiff appeared at an administrative hearing before ALJ Halligan. At the outset, the ALJ advised Plaintiff that he had the right to representation and asked if he wanted time to retain counsel. Plaintiff responded he was confident that he could represent himself. R. 62. Plaintiff stated he lived at home with his wife who was also unemployed. He testified that he was 5 feet, 5½ inches tall and weighed 220 pounds. R. 68. Although Plaintiff initially listed Wolff-Parkinson-White syndrome (WPW), a heart condition that causes a rapid heartbeat, as the reason he sought benefits, he testified at the hearing that his insomnia, restless leg syndrome, and the

2

arthritis in his lower back, shoulders, and left knee make it difficult to function and limited his ability to work. R. 64–65. He was also diagnosed with depression, anxiety, and hypertension. R. 65. He explained that he gets "stressed out" and is irritable when he does not feel well, which prevents him from working. R. 70. Plaintiff noted that he takes medication for his anxiety and depression but no longer takes medication for WPW. R. 68–69. He testified that a doctor instructed him to get rotator cuff surgery in both of his shoulders. R. 78. Although Plaintiff asserted he does not do much at home, he indicated in his function report that he makes breakfast and dinner; does light housework and yard work; and walks, feeds, and cares for his pets. R. 69, 227–28. His wife testified that he has difficulty doing little things at home such as cooking, cleaning, and vacuuming. R. 72. The ALJ asked Plaintiff if he could work in a safe, indoor, unskilled, well-defined sedentary position, rather than the third-shift, heavy-lifting work he had performed in the past. Plaintiff responded he was unsure if he could perform such a job. R. 67.

A vocational expert (VE) also testified at the hearing. R. 73. The ALJ asked the VE whether there were any jobs for a hypothetical person who has a combination of cardiac, orthopedic, and mental impairments; can sit three hours at one time with a daily total of no more than six hours; can walk one hour at a time with a daily total of no more than three hours; can stand three hours at one time for a daily total of six hours; cannot kneel; can crouch to chair level but not lower; can stoop deep enough to reach his hands to mid-calf level but not lower; can occasionally climb stairs; can lift ten pounds frequently and twenty pounds occasionally; and can learn, remember, and execute three-step, well-defined unskilled work sequences. R. 74–75. The VE answered that there are jobs in the Wisconsin labor market that would fit those criteria, including packager, production assistant, inspector, office helper, and food preparer. R. 75–76. Plaintiff asked the VE where these jobs were

3

located in Wisconsin. He noted that he would apply for those jobs if he knew where they were. R. 77–78.

In a 12-page decision dated December 19, 2014, the ALJ found Plaintiff was not disabled. R. 14–26. The ALJ's decision followed the Social Security Administration's five-step sequential process for determining whether an individual is disabled. At the first step, the ALJ concluded Plaintiff met the insured status requirements through September 30, 2013. Although Plaintiff had worked for three weeks in late-November 2014, the ALJ considered this an unsuccessful work attempt. Accordingly, he concluded Plaintiff had not engaged in substantial gainful activity since November 19, 2010. R. 16.

At step two of the disability analysis, the ALJ listed Plaintiff's soreness in his shoulders and neck, WPW, restless leg syndrome with insomnia, anxiety, depression, left knee stiffness, and obesity as severe impairments. Nevertheless, at step three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17. The ALJ noted that although Plaintiff has mild restriction in his activities of daily living, he is fully independent in all self care and his testimony revealed a fair range of activities. While Plaintiff has moderate difficulties with concentration, persistence, or pace, he can manage his fatigue and anxiety by choosing predictable, non-complex work at light or lower exertional levels. *Id.*

The ALJ concluded Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except for the following limitations: he can sit for three hours at one time for a total of six hours; walk for one hour at a time for a total of three hours; never kneel; crouch to chair level but not lower; stoop deep enough to reach his

4

hands to mid-calf level but not lower; learn, remember, and execute three-step, unskilled work sequences; lift up to ten pounds frequently and 20 pounds occasionally; climb stairs occasionally; only work indoors; concentrate 98% of the time; attend work 98% of the time; respond appropriately to rule-based supervision and quality control feedback; interact with coworkers, supervisors, and the public occasionally; and tolerate stress and maintain a competitive work-production pace so long as the work is predictable. R. 19. The ALJ indicated that his RFC is more restrictive and more detailed than the one created by ALJ Waters in 2013. R. 20. In making this RFC finding, the ALJ relied upon Plaintiff's own self-assessment of his abilities and found Plaintiff to be generally credible. He noted, however, that the RFC is more "optimistic" than what Plaintiff alleged he could do because an RFC is meant to be the most an individual can tolerate. *Id.*

The ALJ also reviewed Plaintiff's medical records. Plaintiff testified he had not had any strong WPW episodes since the February 4, 2013 hearing with ALJ Waters. Instead, Plaintiff and his doctors believed that he was affected by poor sleep. R. 20. Plaintiff alleges that when he sleeps, his heart beats very fast and causes him to wake up in the middle of the night. R. 227. His rapid heart rate is also provoked by exertion. R. 291. The medical evidence demonstrates that tests and exams have not revealed the source of Plaintiff's alleged episodes of heart racing. R. 282. Plaintiff was assured by doctors that his symptoms are benign and advised that he lose weight and exercise to reduce the symptoms. R. 293–94. At the hearing, Plaintiff testified that he is trying to lose weight but is unable to exercise due to his constant fatigue. R. 68.

The ALJ further relied on a June 14, 2011 examination, that was conducted approximately seven months after Plaintiff's alleged onset date, in forming the RFC. At the examination, Plaintiff indicated that he goes grocery shopping, walks the dog, does housework and yard work, and

5

services his car on a weekly basis. R. 319. He stated that he could walk up to one mile and could stand for up to three hours, though he would likely have knee pain. *Id.* Plaintiff noted that he has tightness and spasms in his shoulders and neck. R. 320. He takes Tylenol two to three times a week for the pain. *Id.* The examiner concluded Plaintiff has the ability to perform work such as sitting, standing, walking, lifting, handling objects, seeing, hearing, speaking, and traveling. R. 323. She noted that Plaintiff did not experience any fatigue or pain throughout the examination. *Id.*

Based on this examination, the ALJ acknowledged that Plaintiff experienced some renewed symptoms of pain in his shoulders and neck, but he had full ranges of motion and no pain or sensory signs of palpation. R. 21. The ALJ observed that Plaintiff's treating physicians did not support Plaintiff's alleged disabling symptoms. The record did not contain a statement from a treating source opining about Plaintiff's physical or mental work capacity or functional level. *Id.* The ALJ thus relied upon the opinions of the state agency medical experts who studied and summarized Plaintiff's entire record. *Id.* The state agency physicians concluded Plaintiff could perform light, unskilled, uncomplicated work. R. 328, 336. Even though the state agency physicians reviewed Plaintiff's file in 2011, prior to the Appeals Council remanding the case to ALJ Halligan, the ALJ concluded the additional materials submitted by Plaintiff regarding his knee pain did not require that he disregard their assessments. He noted the RFC takes full account of the new medical evidence that was not reviewed by the state's experts in that it prohibits Plaintiff from performing any jobs that require kneeling. R. 21.

Following his discussion of the medical record and Plaintiff's subjective complaints, the ALJ found at step four that Plaintiff was unable to perform his past relevant work as a forklift truck driver. R. 24. He noted that Plaintiff has a limited education. Based on Plaintiff's age, education,

6

work experience, and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* Accordingly, the ALJ determined Plaintiff was not disabled. R. 25.

## LEGAL STANDARD

On judicial review, a court will uphold the Commissioner's decision if the ALJ applied the correct legal standards and supported the decision with substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind could accept as adequate to support a conclusion.'" *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the Agency's own rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

Plaintiff's brief is not even a single page long. He simply asserts that he disagrees with the ALJ's decision because he feels the ALJ did not fully understand his illnesses and the problems he faces on a daily basis. Although *pro se* filings are held to a less exacting standard than those prepared by counsel, the filing must contain a cogent argument with reasons supporting it as well as citations to authority and relevant parts of the record. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). Despite Plaintiff's failure to make a concrete argument, the court has undertaken a review of the record and concludes that the ALJ's findings are supported by substantial evidence.

The ALJ determined that Plaintiff has seven severe impairments but concluded they did not meet or equal the required listings. Plaintiff contends that the ALJ did not understand his illnesses or the difficulties he suffers, however, subjective complaints of pain, standing alone, do not support a finding of disability. 20 C.F.R. § 404.1529(a). The ALJ concluded Plaintiff's complaints were inconsistent with his activities of daily living. He noted Plaintiff is able to cook breakfast, do chores, manage his own self care, and care for his pets. R. 23. Although the ALJ found Plaintiff could not perform his past work as a forklift truck driver, he concluded Plaintiff had the RFC to perform certain light work with very specific limitations, such as sitting three hours at one time; walking one hour at one time; no kneeling, deep crouching, or deep stooping; climbing stairs occasionally; learning, remembering, and executing three-step, well-defined unskilled work sequences; carrying ten pounds frequently and twenty pounds occasionally; working only indoors; concentrating 98% of the day; attending work 98% of the time; responding appropriately to rule-based supervision and quality control feedback; interacting with coworkers, supervisors, and the public occasionally; and

tolerating stress so long as the work is predictable and does not present surprises or unexpected tasks. R. 19.

In creating this detailed RFC, the ALJ relied upon Plaintiff's self-assessment of his abilities, the opinions of two state agency medical physicians, and the medical record as a whole. The ALJ found that Plaintiff's assertions were generally credible but created an RFC that reflected Plaintiff's "maximum" capacity. R. 20. The ALJ stated that the state agency physicians' opinions that Plaintiff could perform light, unskilled, uncomplicated work were consistent with a June 2011 consultative examination report as well as notes from Plaintiff's treating physicians. Plaintiff did not provide any competing medical opinions from his treating physicians to challenge the state agency experts' opinions. Based on the lack of evidence to the contrary, the ALJ did not err by relying on these opinions.

Finally, the court notes that Plaintiff appeared *pro se* at the administrative hearing, despite having the right to counsel pursuant to 42 U.S.C. § 406(a)(1) and 20 C.F.R. § 404.1700. In the Seventh Circuit, a *pro se* claimant may waive the right to representation, provided the ALJ explains to the claimant: "(1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; (3) and the limitation on attorney's fees to twenty-five percent of past due benefits and required court approval of the fees." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991)).

At the February 4, 2013 administrative hearing, ALJ Waters ensured that Plaintiff understood his right to representation. She advised Plaintiff that he had a right to be represented by an attorney or non-attorney. ALJ Waters articulated the ways in which Plaintiff could benefit from having a representative, such as helping him obtain information about his claim, explaining medical terms,

9

protecting his rights, and making any requests or giving notice about the administrative proceedings. R. 36. She also informed Plaintiff that the representative could not charge a fee or receive a fee unless it is approved by the Social Security Administration. *Id.* Plaintiff ultimately decided to proceed without a representative. *Id.* At the December 19, 2014 hearing, ALJ Halligan indicated on the record that ALJ Waters had discussed the right to an attorney with Plaintiff at his previous hearing and asked Plaintiff if he felt comfortable representing himself or if he wanted time to retain an attorney for this hearing. R. 62. Again, Plaintiff responded that he felt confident representing himself. *Id.* Under these circumstances, the court finds that Plaintiff knowingly, intelligently, and voluntarily waived his right to counsel.

Although Plaintiff disagrees with the ALJ's finding that he is not disabled, his contention does not invalidate the ALJ's decision which is supported by substantial evidence in the record. *See Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). After a thorough review of the record, I conclude that the ALJ did not commit any legal errors and that substantial evidence supports his decision. I therefore affirm.

## CONCLUSION

For the reasons above, the Commissioner's decision is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** this   5th   day of July, 2017.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
